Patterson Belknap

www.pbwt.com

May 28, 2024

Jane Metcalf
Partner
(212) 336-2152
jmetcalf@pbwt.com

**By ECF**
Hon. Gregory H. Woods, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Schuman v. Visa U.S.A., Inc.*, **1:24-cv-666 (GHW) (GS)**

Dear Judge Woods:

In accordance with Part 2(E) of Your Honor's individual rules, we write on behalf of defendants InComm Financial Services, Inc. ("InComm") and Pathward, N.A. to request a pre-motion conference for a Rule 12(b)(6) motion to dismiss the Amended Complaint, Dkt. No. 29 (the "Complaint").

In the Complaint, Plaintiff Ira Schuman contends that he was misled about the security features of InComm's Vanilla-branded prepaid Visa gift cards ("Vanilla Gift Cards"). Compl. ¶ 21. Vanilla Gift Cards are sold at stores throughout the country, and allow the holder to spend a prepaid cash balance at retailers that participate in the Visa card network. Although a Vanilla Gift Card functions similarly to a debit card, a cardholder does not need to open an account or register the card in order to use it. This "anonymity" makes it easy to give Vanilla Gift Cards as gifts.

Plaintiff claims that he purchased four Vanilla Gift Cards in December 2023, gave them to his employees as gifts, and then learned from one of his employees that her card had no funds. Compl. ¶¶ 21, 24. After calling InComm's customer service, he learned that the card balance had been spent by an unknown third party who somehow gained access to the funds. *Id.* ¶ 26. InComm then mailed him a replacement card with the full balance. *Id.* ¶ 27, n.8. Plaintiff alleges that two other cards that he purchased were likewise "drained of funds through unauthorized transactions," *id.* ¶ 11, but he provides no details and does not allege that he contacted InComm about them or sought replacement cards. Nevertheless, Plaintiff accuses Defendants of misleading him about the security of the card funds, and on this basis asserts claims for (1) deceptive conduct under New York General Business Law § 349 ("Section 349"); and (2) improper handling of unauthorized fund transfers under the Electronic Fund Transfer Act (the "EFTA"), 15 U.S.C. § 1693f. Plaintiff purports to assert these claims on behalf of statewide and nationwide classes of consumers.

**New York General Business Law Section 349**

To state a Section 349 claim, a plaintiff must allege (1) consumer-oriented conduct, that is (2) materially misleading, and (3) injury suffered as a result of the allegedly deceptive act or practice. *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 358 (S.D.N.Y. 2022). Here, the Complaint fails to allege a materially misleading statement or omission, and also fails to allege any injury. Each of these is an independent basis for dismissal of the claim.

The Honorable Gregory H. Woods
May 28, 2024

*First*, the Complaint contains no plausible allegation of any deceptive statement in the sale of Vanilla Gift Cards. The only deceptive "statements" alleged are "the Visa name and logo," which appear on the cards themselves and their packaging. Compl. ¶¶ 18, 21. According to Plaintiff, the Visa name and logo misled him and other consumers to believe his cards "would be secure, that his funds would not be stolen, and that if any problems arose with the cards, Visa would assist Plaintiff in good faith." *Id.* ¶ 21. This farfetched theory cannot support a claim of deception under the "reasonable consumer" standard. *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020). "[I]t is implausible that a reasonable consumer would view the … branding" on the Vanilla Gift Card packaging "and automatically conclude—as Plaintiff apparently did"— that it meant any more than the obvious statement that the card can be used on the Visa network, as it indisputably can be. *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 86 (S.D.N.Y. 2023).

Furthermore, even if the Visa logo conveyed any factual message at all about security or customer service, it still would not convey the grandiose message Plaintiff attributes to it. Plaintiff alleges that the logo led him to expect that his "funds would not be stolen," *i.e.*, that the payment card would be ***entirely impervious*** to theft and fraud. Reasonable consumers understand that every payment card is at some risk of fraud, and, given this "crucial" context, would not interpret the Visa branding as a guarantee that this ubiquitous risk had been somehow eliminated. *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019). Though Plaintiff attempts to bolster his claim by alluding to a "Zero Liability" fraud protection policy that he found on a Visa website, he does not allege that he read this policy or reasonably expected it to apply to Vanilla Gift Cards. Compl. ¶ 21, n.6. Nor could he, as the policy explicitly states that it ***does not apply*** to anonymous prepaid transactions, such as those conducted with Vanilla Gift Cards. *See* https://usa.visa.com/pay-with-visa/visa-chip-technology-consumers/zero-liability-policy.html ("Visa's Zero Liability Policy does not apply to . . . anonymous prepaid card transactions[.]"). *See* Compl. ¶ 18.

*Second*, to the extent Plaintiff seeks to premise his Section 349 claim on the purportedly misleading omission of information, that theory is likewise inadequate. He fails to identify any information that Defendants withheld from any communication and that would be material to a reasonable consumer. *Morales v. Apple, Inc.*, No. 22-CV-10872 (JSR), 2023 WL 5579929, at *2 (S.D.N.Y. Aug. 29, 2023) ("[A] plaintiff must . . . identify the specific acts or practices alleged to be misleading."). Instead, he relies upon vague allegations that Defendants failed to inform consumers of (i) unspecified "security flaws of Visa Vanilla card packaging," which allegedly left the card balances vulnerable to theft by various methods of fraud; and (ii) Defendants' purported "practice" of denying refunds to consumers harmed by fraud. *Id.* ¶¶ 31-33.

Plaintiff has not alleged, and cannot allege, facts to support either theory of omission. To start, the risk of fraud by package tampering—which is intrinsic to any prepaid anonymous product—is not "omitted" from the packaging at all, but rather is explicitly called out with two warnings: "IF TAMPER EVIDENT, DO NOT PURCHASE" and, in red text, "[f]or security purposes, please check that the underlined portion of the number matches the number below." Furthermore, the fact that fraud sometimes happens is common knowledge, and is certainly information that a reasonable consumer "possessed or could reasonably have obtained" other than through the defendant. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995). An omission-based GBL claim cannot lie where, as here, the "[d]efendant clearly did not ***alone possess*** the allegedly omitted information." *Dwyer v. Allbirds,*

The Honorable Gregory H. Woods
May 28, 2024

*Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022) (emphasis added).  Finally, the claim that Defendants omitted the so-called "practice" of denying refunds is at odds with Plaintiff's own allegations, which show that he requested one refund and in fact received it.

*Third*, Plaintiff fails to identify any injury resulting from the misleading practices that he alleges.  Although Plaintiff posits a variety of ways that fraud can occur (*see, e.g.*, Compl. ¶¶ 28-30, 42-43), he fails to allege that adequate "security" could prevent any of them, nor does he allege that any of them in fact befell his cards.  He also fails to allege that the purported deception caused him to pay a price premium.  *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017) (requiring allegations that the price was inflated due to alleged deception).  Finally, Plaintiff admits that he received a replacement for the only card he called customer service about, and implicitly acknowledges that he never pursued a refund for any of the other cards he bought.  Accordingly, he has not alleged that he suffered any monetary losses attributable to Defendants' purported security lapses or refund policies.  On the contrary, his allegations reflect that whatever losses he suffered were attributable to his own failure to pursue assistance from customer service.

## The Electronic Fund Transfer Act

Plaintiff fails to state a claim under the EFTA because he relies on a statute that does not apply to Vanilla Gift Cards.  He cites EFTA provisions addressing when a "financial institution" can debit a consumer's "account" for an electronic fund transfer that is unauthorized or erroneous.  *See* Am. Compl. ¶¶ 72-81 (citing 15 U.S.C. § 1693f).  But these provisions apply only if there is an "account," which is defined as "a demand deposit, savings deposit, or other asset account … as described in regulations of the [Consumer Financial Protection Bureau ("CFPB")]." *See* 15 U.S.C. § 1693a(2).  Critically, the CFPB's regulations implementing the EFTA expressly exclude "general-use prepaid card[s] . . . that [are] both marketed and labeled as [] gift card[s]" from this definition of "account." *See* 12 C.F.R. 1005.2(b)(3)(D)(4).  Vanilla Gift Cards fit squarely within this exclusion. *See* Compl. ¶ 4 (cards are used for general purposes); ¶ 3 (cards are marketed as gift cards); ¶ 22 (cards are labeled as gift cards).

Indeed, the CFPB made an explicit policy decision to exclude prepaid gift cards from the definition of "account" because a contrary decision would "change dramatically" "the cost structure of gift cards" because they "***do not typically offer … protections***" for unauthorized transactions.  83 Fed. Reg. 6364, 6368 (Feb. 13, 2018).  Dismissal is warranted because a Vanilla Gift Card is unquestionably not an "account" under the EFTA.  Accordingly, Plaintiff should pay attorney's fees and costs for asserting this claim. *See* 15 U.S.C. § 1693m(f).

For these reasons, Defendants respectfully request permission to file the motion to dismiss. We look forward to presenting these issues to the Court.

Respectfully submitted,

*/s/ Jane Metcalf*
Jane Metcalf

cc:     All counsel (by ECF)